**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01583-PAB-STV

MODERN GAMING, INC.

       Plaintiff,

v.

SOCKEYE SOFTWARE, LLC, and
EMPIRE TECHNOLOGICAL GROUP, LTD.,

       Defendants.

---

**EMPIRE TECHNOLOGICAL GROUP, LTD'S ANSWER, AFFIRMATIVE**
**DEFENSES, AND CROSS CLAIMS**

---

Defendant Empire Technological Group, Ltd. ("Empire"), by and through undersigned counsel, Kelly Law Partners, LLC, hereby files its Answer, Affirmative Defenses, and Cross Claims in response to Plaintiff's Complaint as follows:

**BACKGROUND[1]**

Empire was initially approached by Defendant Sockeye Software, LLC ("Software") in 2021 to explore an acquisition of Sockeye; Empire ultimately elected not to acquire Sockeye. Sockeye then proposed an exclusive license and distribution with Empire. During these discussions, Sockeye advised that it had a licensing agreement with Plaintiff Modern Gaming, Inc. ("Modern") in a handful of states but did not share a copy of the Sockeye/Modern licensing

---

[1] This Background is offered to assist the Court and others to understand the defenses and cross claims asserted, their factual bases, and the relief sought. It is not intended to be a formal claim or averment under F.R.C.P. 8, and, therefore, no response is required. Rules 8 through 10 do not prohibit a useful introductory statement.

agreement with Empire.   Sockeye advised Empire that Modern had not been performing, and, therefore, Sockeye was in the process of terminating its license agreement with Modern.   Empire relied upon these representations from Sockeye, and Empire and Sockeye entered into a Distributorship and License Agreement for Gaming Software, Systems and Equipment ("Empire Agreement"), effective as of February 8, 2022.

The Empire Agreement contains several representations and warranties from Sockeye, including a promise that it does not infringe the rights of any third party, that Sockeye had all necessary rights and authority to enter into the Empire Agreement and perform the obligations required in the Empire Agreement, and that there were no agreements, arrangements, or understandings that do or could interfere with, materially limit, or materially impair Sockeye's performance of its obligations under the Empire Agreement.   With this background, Empire answers the Complaint and asserts its affirmative defenses and cross claims as follows:

## INTRODUCTION

1.     Empire is without sufficient information or knowledge to admit or deny the allegations in Paragraph 1 of the Complaint and therefore denies them.

2.     Empire is without sufficient information or knowledge to admit or deny the allegations in Paragraph 2 of the Complaint and therefore denies them.

3.     Empire denies the allegations in Paragraph 3 to the extent they are directed at Empire.

4.     Empire denies the allegations in Paragraph 4 to the extent they are directed at Empire.

5.     Empire denies it has engaged in any unlawful conduct.   Empire is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 5 of the

Complaint and therefore denies them.

6.     Empire denies the allegations in Paragraph 6 to the extent they are directed at Empire.

## THE PARTIES

7.     Empire is without sufficient information or knowledge to admit or deny the allegations in Paragraph 7 of the Complaint.

8.     Empire is without sufficient information or knowledge to admit or deny the allegations in Paragraph 8 of the Complaint.

9.     Empire admits the allegations in Paragraph 9 of the Complaint.

## JURISDICTION AND VENUE

10.     Empire does not contest jurisdiction.

11.     Empire is without sufficient information or knowledge to admit or deny the allegations in Paragraph 11 of the Complaint.

12.     Empire is without sufficient information or knowledge to admit or deny the allegations in Paragraph 12 of the Complaint.

13.     Empire admits the allegations in Paragraph 13 of the Complaint.

14.     Empire denies it has engaged in any unlawful conduct.

15.     Empire is without sufficient information or knowledge to admit or deny the allegations in Paragraph 15 of the Complaint.

16.     Empire does not contest jurisdiction; however, Empire denies the remaining allegations in Paragraph 16 of the Complaint.

17.     Empire does not contest venue; however, Empire denies the remaining allegations in Paragraph 17 of the Complaint.

## FACTUAL ALLEGATIONS

**A.    The Parties' Roles in the Computerized Gaming Industry**

18.    Empire admits the allegations as to Empire.  Empire lacks sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 18.

19.    Empire admits the allegations in Paragraph 19 of the Complaint.

20.    Empire admits the allegations in Paragraph 20 of the Complaint.

21.    Empire is without sufficient information or knowledge to admit or deny the allegations in Paragraph 21 of the Complaint and therefore denies them.

22.    Empire admits it manufactures and distributes electronic gaming hardware and devices.  Empire is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 22 of the Complaint and therefore denies them.

23.    Empire admits the allegations in Paragraph 23 of the Complaint.

**B.    Modern and Sockeye Execute the License Agreement**

24.    Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 24 and therefore denies them.

25.    Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 25 and therefore denies them.

26.    Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 26 and therefore denies them.

27.    The License Agreement speaks for itself.  Empire denies any allegations inconsistent with the terms of the License Agreement.

28.    Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 28 and therefore denies them.  If the allegations relate to an express term of the

License Agreement, the License Agreement speaks for itself. Empire denies any allegations inconsistent with the terms of the License Agreement.

29.     The License Agreement speaks for itself. Empire denies any allegations inconsistent with the terms of the License Agreement.

30.     The License Agreement speaks for itself. Empire denies any allegations inconsistent with the terms of the License Agreement.

31.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 31 and therefore denies them.

32.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 32 and therefore denies them.

### C.     Modern Invests Substantial Resources in Developing Business in the Exclusive Territories

33.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 33 and therefore denies them.

34.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 34 and therefore denies them.

35.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 35 and therefore denies them.

36.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 36 and therefore denies them.

37.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 37 and therefore denies them.

38.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 38 and therefore denies them.

39.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 39 and therefore denies them.

### D.     Defendants Develop a Scheme to Breach the License Agreement and Interfere with Modern's Exclusivity Rights

40.     Empire denies the allegations in Paragraph 40 of the Complaint.

41.     Empire was initially approached by Sockeye in 2021 to explore an acquisition of Sockeye; Empire ultimately elected not to acquire Sockeye.  To the extent the allegations in Paragraph 41 purport to quote an email, Empire denies language inconsistent with the email itself and further denies allegations taken out of context.

42.     Empire was initially approached by Sockeye in 2021 to explore an acquisition of Sockeye; Empire ultimately elected not to acquire Sockeye.  Sockeye then switched gears and proposed an exclusive license and distribution agreement with Empire.  During these discussions, Sockeye advised that it had a licensing agreement with Modern in a handful of states; however, Sockeye stated Modern had not been performing, and, therefore, Sockeye was in the process of terminating the Modern license agreement.  Empire relied upon these representations from Sockeye, and Empire and Sockeye entered into a Distributorship and License Agreement for Gaming Software, Systems and Equipment ("Empire Agreement"), effective as of February 8, 2022.  The Empire Agreement contains several representations and warranties from Sockeye, including a promise that it does not infringe the rights of any third party, that Sockeye had all necessary rights and authority to enter into the Empire Agreement and perform the obligations required in the Empire Agreement, and that there are no agreements, arrangements, or understandings that do or could interfere with, materially limit, or materially impair Sockeye's performance of its obligations under the Empire Agreement.  Empire therefore denies the allegations in Paragraph 42 of the Complaint.

6

43. Sockeye stated Modern had not been performing under the terms of the Modern license agreement and was in the process of terminating the Modern license agreement. Empire relied upon these representations from Sockeye, and Empire and Sockeye entered into a Distributorship and License Agreement for Gaming Software, Systems and Equipment ("Empire Agreement"), effective as of February 8, 2022. The Empire Agreement contains several representations and warranties from Sockeye, including a promise that it does not infringe the rights of any third party, that Sockeye had all necessary rights and authority to enter into the Empire Agreement and perform the obligations required in the Empire Agreement, and that there are no agreements, arrangements, or understandings which do or could interfere with, materially limit, or materially impair Sockeye's performance of its obligations under the Empire Agreement. Empire was not and is not responsible for obtaining Modern's consent. Empire denies the allegations in Paragraph 43 of the Complaint.

44. Sockeye stated Modern had not been performing under the terms of the Modern license agreement and was in the process of terminating the Modern license agreement. Empire relied upon these representations from Sockeye, and Empire and Sockeye entered into a Distributorship and License Agreement for Gaming Software, Systems and Equipment ("Empire Agreement"), effective as of February 8, 2022. The Empire Agreement contains several representations and warranties from Sockeye, including a promise that it does not infringe the rights of any third party, that Sockeye had all necessary rights and authority to enter into the Empire Agreement and perform the obligations required in the Empire Agreement, and that there are no agreements, arrangements, or understandings that do or could interfere with, materially limit, or materially impair Sockeye's performance of its obligations under the Empire Agreement. Empire

was not and is not responsible for obtaining Modern's consent.  Empire denies the allegations in Paragraph 44 of the Complaint.

       **E.**      **Sockeye Unlawfully Terminates the License Agreement**

      45.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 45 and therefore denies them.

      46.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 46 and therefore denies them.

      47.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 47 as to the basis of Modern's termination and therefore denies them.  Empire denies the remaining allegations in Paragraph 47 of the Complaint.

      48.     Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 48 and therefore denies them.

      49.     Empire denies the allegations in Paragraph 49 to the extent they are directed at Empire. Empire lacks sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 49 and therefore denies them.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract against Sockeye**

      50.     Empire incorporates its responses above as if fully restated herein.

      51.     Paragraph 51 contains a conclusion of law to which no response is required; moreover, the allegations in Paragraph 51 are not directed to Empire.  To the extent a response is required, Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 51 and therefore denies them.

      52.     The allegations in Paragraph 52 are not directed to Empire, and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient

information or knowledge to admit or deny the allegations in Paragraph 52 and therefore denies them.

53.     The allegations in Paragraph 53 are not directed to Empire, and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 53 and therefore denies them.

54.     The allegations in Paragraph 54 are not directed to Empire and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 54 and therefore denies them.

## SECOND CLAIM FOR RELIEF
### Promissory Estoppel against Sockeye – Alternative Theory of Liability

55.     Empire incorporates its responses above as if fully restated herein.

56.     The allegations in Paragraph 56 are not directed to Empire, and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 56 and therefore denies them.

57.     The allegations in Paragraph 57 are not directed to Empire, and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 57 and therefore denies them.

58.     The allegations in Paragraph 58 are not directed to Empire, and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient

information or knowledge to admit or deny the allegations in Paragraph 58 and therefore denies them.

59.     The allegations in Paragraph 59 are not directed to Empire, and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 59 and therefore denies them.

60.     The allegations in Paragraph 60 are not directed to Empire, and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 60 and therefore denies them.

61.     The allegations in Paragraph 61 are not directed to Empire, and, therefore, no response is required by Empire.  To the extent a response is required, Empire lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 61 and therefore denies them.

**THIRD CLAIM FOR RELIEF**
**Civil Conspiracy against Sockeye and Empire**

62.     Empire incorporates its responses above as if fully restated herein.

63.     Empire denies the allegations in Paragraph 63 of the Complaint.

64.     Empire denies the allegations in Paragraph 64 of the Complaint.

65.     Empire denies the allegations in Paragraph 65 of the Complaint.

**FOURTH CLAIM FOR RELIEF**
**Tortious Interference with Contract against Empire**

66.     Empire incorporates its responses above as if fully restated herein.

67.     Paragraph 67 contains a conclusion of law to which no response is required.  To the
extent a response is required, Empire lacks sufficient information or knowledge to admit or deny
the allegations in Paragraph 67 and therefore denies them.

68.     Empire denies the allegations in Paragraph 68 of the Complaint.

69.     Empire denies the allegations in Paragraph 69 of the Complaint.

70.     Empire denies the allegations in Paragraph 70 of the Complaint.

71.     Empire denies the allegations in Paragraph 71 of the Complaint.

**FIFTH CLAIM FOR RELIEF**
**Tortious Interference with Economic Advantage against Empire**

72.     Empire incorporates its responses above as if fully restated herein.

73.     Empire lacks sufficient information or knowledge to admit or deny the allegations
in Paragraph 73 and therefore denies them.

74.     Empire denies the allegations in Paragraph 74 of the Complaint.

75.     Empire denies the allegations in Paragraph 75 of the Complaint.

76.     Empire denies the allegations in Paragraph 76 of the Complaint.

77.     Empire denies the allegations in Paragraph 77 of the Complaint.

**GENERAL DENIAL**

Empire denies any allegation not expressly admitted above.

**AFFIRMATIVE DEFENSES**

Having fully answered Plaintiff's Complaint, Empire pleads the following general defenses
and/or affirmative defenses on its own behalf, without waiving any arguments Empire may be
entitled to assert regarding the burden of proof, legal presumptions, or other legal
characterizations.

1.     Plaintiff has failed to mitigate its damages, if any.

2.      Without assuming any liability, Plaintiff's claim for damages is barred in whole or in part by the doctrine of *de minimis non curet lex* and/or because damages (if any) associated with such a claim is too speculative to be permitted.

3.      Plaintiff has suffered no recoverable damages and/or has not suffered damages in the nature and to the extent alleged.

4.      Plaintiff's claim is groundless, frivolous, and vexatious as to Empire, and Empire is entitled to its costs and attorneys' fees incurred in connection with this action.

5.      Plaintiff's damages, if any, are the result of actions of a third party over whom Empire has no affiliation or control.

6.      Empire specifically reserves the right to assert other defenses or counterclaims as discovery and/or investigation in this matter are accomplished and, if appropriate, may request leave of the Court to amend its Answer and to add additional affirmative defenses, modify existing affirmative defenses, or pursue any available counterclaims against Plaintiff, if necessary, at a later date.

## CROSS CLAIMS

1.      Sockeye Software, LLC is a Colorado limited liability company with its principal place of business located at 12726 W. 85th Circle, Arvada, CO 80005.

2.      Empire Technological Group is a Nevada corporation with its principal place of business located at 7175 West Post Road, Las Vegas, NV 89113.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), because this lawsuit involves entities of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     Sockeye is a limited liability company with one member: Todd Seymour, who is domiciled in Colorado.  Therefore, Sockeye is a citizen of Colorado for purposes of diversity jurisdiction.  None of Sockeye's members are citizens of Louisiana.  Thus, Sockeye is not a citizen of Louisiana for purposes of diversity jurisdiction.

5.     Empire is a corporation organized and existing under the laws of Nevada with its principal place of business located in Nevada and is therefore a citizen of Nevada for purposes of diversity jurisdiction.

6.     Empire seeks indemnification from and against any damages to Modern and costs of its defense, which amounts, based on Modern's Complaint alone, are in excess of $75,000.

7.     This Court has general personal jurisdiction over Sockeye, because Sockeye maintains its principal place of business in Colorado and is therefore at home in Colorado for purposes of general personal jurisdiction.

8.     Venue in this district is proper in accordance with 28 U.S.C § 1391(b)(3), because Sockeye is subject to personal jurisdiction in Colorado.

**FACTUAL ALLEGATIONS**

9.     Sockeye approached Empire in December of 2021 to explore whether Empire had an interest in acquiring Sockeye.

10.     Empire, for various reasons, declined an acquisition of Sockeye.

11.     Sockeye then approached Empire with an offer for Empire to hold exclusive distribution rights to distribute Sockeye's Class II software and products in all of North America.

12.     Sockeye disclosed it had an existing license agreement with Modern, which granted Modern an exclusive license to use Sockeye's Class II Platform Development Software in gaming devices ("Modern Agreement") in Florida, Alabama, New York, Louisiana, North Carolina, and

the Chickasaw Nation in Oklahoma ("Modern Territories"); however, Sockeye informed Empire that Modern had not been performing under the terms of the Modern Agreement.

13.     In February of 2022, Todd Seymour, CEO of Sockeye, told Empire Sockeye was in the process of terminating the Modern Agreement and Modern's related distribution rights.

14.     On February 28, 2022, Sockeye informed Empire it was in discussions with Modern to transfer all approved Big Bear products to Empire and was working with Modern on a clean exit strategy.

15.     Sockeye submitted a termination letter to Modern dated February 23, 2022, which was allegedly not emailed to Sockeye until March 14, 2022.

16.     Sockeye did not provide a copy of the Modern termination letter to Empire.

17.     Empire did not review or comment on the Modern termination letter.

18.     On March 14, 2022, Sockeye submitted an unsolicited email to Empire proposing Empire purchase Modern's equipment.  Empire responded that it has no interest in purchasing Modern's equipment, as Empire has its own inventory of proprietary equipment.

19.     Empire was not aware of the Modern termination letter until a copy was provided to it by Modern's counsel in April of 2022.

20.     Empire and Sockeye entered into a Distributorship and License Agreement for Gaming Software, Systems and Equipment ("Empire Agreement"), effective as of February 8, 2022.

21.     In entering into the Empire Agreement, Empire relied upon Sockeye's representation that it had a good faith basis for terminating the Modern Agreement.

22.     In entering into the Empire Agreement, Empire relied upon Sockeye's representation that it had terminated the Modern Agreement.

23.     The term of the Empire Agreement is for three years with an automatic renewal for an additional two-year term or terms at Empire's sole discretion.

24.     Sockeye agreed to grant Empire an exclusive right to sell and lease Sockeye-owned products and gaming software in all of North America, excluding Mexico, South America, and the Gray Wolf Peak Casino owned and run by the Confederated Salish & Kootenai Tribes (hereinafter referred to "North America").

25.     Empire paid Sockeye $200,000 for the use and application of all Sockeye game content.

26.     Sockeye represented it would transfer exclusive distribution rights for North America to Empire, and Sockeye would be fully responsible for transferring legal title to these territorial rights.

27.     It was the sole responsibility of Sockeye to effect any lawful activities on its part in order to deliver clear title to Empire of the North American distribution rights.

28.     Empire reasonably relied upon Sockeye's representations and warranties as set forth in the Empire Agreement.

29.     Empire reasonably relied upon Sockeye's announcement that any distribution rights previously held by Modern had been legally and appropriately transferred and/or terminated under the terms of the Modern Agreement.

30.     Modern has challenged Empire's distribution rights in certain areas of North America.

31.     Sockeye has not cleared title to Empire's promised exclusive North American distribution rights to Sockeye's Class II products.

32.     Sockeye agreed to engage counsel and take legal action as necessary at Sockeye's

sole expense, should a previous distributor for Sockeye take any legal action.

33.     Modern submitted a demand letter to Empire dated April 27, 2022, claiming Sockeye had improperly terminated the Modern Agreement.

34.     The April 27, 2022 correspondence is the first Empire heard of any issue with the termination of the Modern Agreement.

35.     Empire is without sufficient information or knowledge as to the validity of the disputes between Modern and Sockeye; however, in an abundance of caution, Empire voluntarily ceased any marketing activities in the putative Modern territories in April of 2022.

36.     Sockeye expressly represented and warranted to Empire that the grant by Sockeye to Empire of the rights pursuant to the Empire Agreement would not infringe the rights of any third party.

37.     Sockeye expressly represented and warranted to Empire that Sockeye had all necessary rights and the corporate power and authority to enter into the Empire Agreement and perform the obligations required in the Empire Agreement.

38.     Sockeye expressly represented and warranted to Empire that to the best of Sockeye's knowledge, after due inquiry, there are no agreements, arrangements, or understandings that do or could interfere with, materially limit, or materially impair Sockeye's performance of its obligations under the Empire Agreement.

39.     Sockeye promised to indemnify, defend, and hold harmless Empire against all actions, claims, losses, damages, and expenses, including reasonable attorney's fees of whatever kind that in any way arise from the acts or omissions of Sockeye, its employees, servants, agents, affiliates, or any other person for whose acts Sockeye is or may be liable.

40.     The construction of the Empire Agreement and the rights and liability of the parties are governed by the laws of the State of Nevada.

## FIRST CROSS CLAIM FOR RELIEF
### Breach of Contract against Sockeye

41.     Empire incorporates all of the foregoing paragraphs as if fully reinstated herein.

42.     The Empire Agreement between Empire and Sockeye is a valid and binding contract between Sockeye and Empire.

43.     Sockeye breached the Empire Agreement by, among other reasons, failing to provide clear title to Empire for an exclusive right to sell and lease Sockeye-owned products and gaming software in all of North America.

44.     Sockeye breached the Empire Agreement by, among other reasons, representing to Empire that the grant by Sockeye to Empire of the rights pursuant to the Empire Agreement would not infringe the rights of any third party.

45.     Sockeye breached the Empire Agreement by, among other reasons, representing that Sockeye had all necessary rights and authority to enter into the Empire Agreement and perform the obligations required in the Empire Agreement.

46.     Sockeye breached the Empire Agreement by, among other reasons, failing to indemnify, defend, and hold harmless Empire against all actions, claims, losses, damages, and expenses, including reasonable attorney's fees of whatever kind that in any way arise from the acts or omissions of Sockeye.

47.     Empire has performed all of its obligations under the Empire Agreement.

48.     As a result of Sockeye's breaches of the Empire Agreement, Empire has sustained damages in an amount to be proven at trial.

**SECOND CROSS CLAIM FOR RELIEF**
**Fraudulent and/or Negligent Inducement against Sockeye**

49.     Empire incorporates all of the foregoing paragraphs as if fully reinstated herein.

50.     In February of 2022, Sockeye CEO, Todd Seymour, informed Empire that Modern had not been performing under the terms of the Modern Agreement.

51.     As CEO, Seymour is an agent of Sockeye.

52.     Seymour's statements are imputed to Sockeye.

53.     In February of 2022, Seymour told Empire that Sockeye was in the process of terminating the Modern Agreement and Modern's related distribution rights.

54.     In February of 2022, Seymour told Empire that Sockeye had a good faith basis for terminating the Modern Agreement and Modern's related distribution rights.

55.     Empire and Sockeye entered into a Distributorship and License Agreement for Gaming Software, Systems and Equipment ("Empire Agreement"), effective as of February 8, 2022.

56.     In entering into the Empire Agreement, Empire relied upon Sockeye's representation that it had a good faith basis for terminating the Modern Agreement.

57.     In entering into the Empire Agreement, Empire relied upon Sockeye's representation that it was in the process of terminating the Modern Agreement.

58.     Sockeye expressly represented and warranted to Empire as a term of inducement that the grant by Sockeye to Empire of the rights pursuant to the Empire Agreement would not infringe the rights of any third party.

59.     Sockeye expressly represented and warranted to Empire as a term of inducement that Sockeye had all necessary rights and the corporate power and authority to enter into the Empire Agreement and perform the obligations required in the Empire Agreement.

18

60.     Sockeye expressly represented and warranted to Empire, as term of inducement, that to the best of Sockeye's knowledge, after due inquiry, there were no agreements, arrangements, or understandings that did or could interfere with, materially limit, or materially impair Sockeye's performance of its obligations under the Empire Agreement.

61.     Empire reasonably relied upon Sockeye's promises and statements as set forth in paragraphs 50, 53, 54, 58, 59, and 60 above.

62.     Sockeye's promises and statements as set forth in paragraphs 50, 53, 54, 58, 59, and 60 above were false at the time they were made.

63.     Sockeye knew or had reason to know the promises and statements as set forth in paragraphs 50, 53, 54, 58, 59, and 60 above were false at the time they were made.

64.     Alternatively, Sockeye acted negligently in communicating the statements as set forth in paragraphs 50, 53, 54, 58, 59, and 60 above.

65.     Empire has been damaged by Sockeye's fraudulent and/or negligent misrepresentations in an amount to be proven at trial.

### THIRD CROSS CLAIM FOR RELIEF
### Indemnification against Sockeye

66.     Empire incorporates all of the foregoing paragraphs as if fully reinstated herein.

67.     Sockeye promised to indemnify, defend, and hold harmless Empire against all actions, claims, losses, damages, and expenses, including reasonable attorney's fees of whatever kind that in any way arise from the acts or omissions of Sockeye, its employees, servants, agents, affiliates, or any other person for whose acts Sockeye is or may be liable.

68.     Sockeye expressly represented and warranted to Empire that to the best of Sockeye's knowledge, after due inquiry, there are no agreements, arrangements, or understandings

that do or could interfere with, materially limit, or materially impair Sockeye's performance of its obligations under the Empire Agreement.

69.     Empire has been damaged by Sockeye's actions, including but not limited to, Sockeye's breach of its warranties, alleged wrongful termination of the Modern Agreement, and failure to defend and indemnify Empire in both this action and the original action initiated in Louisiana.

70.     Empire expressly denies it engaged in any wrongful action; however, if it is held liable for any damages to Modern, Empire is entitled to indemnification from Sockeye.

71.     Empire seeks indemnification from Sockeye and reimbursement of any and all legal fees, costs, and expenses associated with defending itself in both this action and the Louisiana action, as well as any other fees, costs, and/or expenses related to either action.

## **PRAYER FOR RELIEF**

Having stated its causes of action above, Empire Technological Group, Ltd. prays for judgment and equitable relief against Sockeye Software, LLC as follows:

A.  Damages caused by the multiple breaches of the Empire Agreement;

B.  Damages caused by the fraudulent inducement to enter into the Empire Agreement;

C.  Costs and expenses of this action;

D.  Attorney's fees as allowable by law or contract;

E.  Indemnification and reimbursement;

F.  Pre-judgment and post-judgment interest on any award of damages;

G.  Such other and further relief as this Court deems just and appropriate.

Respectfully submitted this 28th day of August, 2023.

**KELLY LAW PARTNERS, LLC**

*/s/ Shannon M. Bell*
Shannon M. Bell, Reg. No. 35440
Kelly Law Partners, LLC
501 S. Cherry St., Ste. 1100
Denver, CO 80246
T: (720) 236-1800
F: (720) 236-1799
sbell@kellylawpartners.com
*Attorney for Defendant Empire*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of August, 2023, a true and correct copy of the foregoing EMPIRE TECHNOLOGICAL GROUP, LTD.'S ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, AND CROSS CLAIMS was electronically filed with the Court and thereby served upon the following:

Kathryn A. Reilly
Jacob A. Rey
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Phone: (303) 244-1800
Email: reilly@wtotrial.com
       rey@wtotrial.com

*Attorneys for Plaintiff*

*/s/ Kelly M. Trease*
Kelly M. Trease