# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01583-PAB-STV

MODERN GAMING, INC,

    Plaintiff,

v.

SOCKEYE SOFTWARE, LLC; and
EMPIRE TECHNOLOGICAL GROUP, LTD,

    Defendants.

---

## DEFENDANT SOCKEYE SOFTWARE, LLC'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS WITH JURY DEMAND

---

Defendant Sockeye Software, LLC ("Sockeye") through its attorneys, Holland & Knight LLP, respectfully submits this First Amended Answer to Plaintiff's Complaint, Affirmative Defenses and Counterclaims with Jury Demand.

## INTRODUCTION

1. Sockeye admits the allegations contained in Paragraph 1 of the Complaint and admits that Sockeye could terminate the License Agreement based on Modern's material breach.

2. Sockeye denies the allegations contained in Paragraph 2 of the Complaint or lacks sufficient information to admit or deny the allegations and therefore denies them.

3. Sockeye denies the allegations contained in Paragraph 3 of the Complaint.

4. Sockeye admits terminating the License Agreement but otherwise denies the allegations contained in Paragraph 4 of the Complaint.

5. Sockeye denies the allegations contained in the first sentence of Paragraph 5 of the Complaint. Sockeye lacks sufficient information to admit or deny the remainder of Paragraph 5 and therefore denies it.

6. Sockeye admits that Modern filed this lawsuit but denies the remaining allegations contained in Paragraph 6 of the Complaint.

## THE PARTIES

7. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 7 of the Complaint, and therefore denies them.

8. Sockeye admits the allegations contained in Paragraph 8 of the Complaint.

9. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 9 of the Complaint, and therefore denies them.

## JURISDICTION AND VENUE

10. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 10 of the Complaint, and therefore denies them.

11. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 11 of the Complaint, and therefore denies them.

12. Sockeye admits that none of its members are citizens of Louisiana. Sockeye denies the remaining allegations contained in the first two sentences of Paragraph 12 of the Complaint.

13. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 13 of the Complaint, and therefore denies them.

14. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 14 of the Complaint, and therefore denies them. Sockeye denies that Modern's damages exceed $75,000.00.

15. Sockeye admits the allegations contained in Paragraph 15 of the Complaint.

16. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 16 of the Complaint, and therefore denies them.

17. Sockeye admits the allegations contained in Paragraph 17 of the Complaint.

## **FACTUAL ALLEGATIONS**

**Section A.**

18. Sockeye admits that it does business in Class II gaming, but it denies the allegations contained in Paragraph 18 of the Complaint.

19. Paragraph 19 of the Complaint contains legal conclusions for which no response is necessary. Sockeye admits that Class II and Class III games exist.

20. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 20 of the Complaint (particularly regarding "advantages and efficiencies"), and therefore denies them.

21. Sockeye admits that Modern assembled and distributed gaming units; Sockeye otherwise denies the allegations contained in Paragraph 21 of the Complaint.

22. Sockeye admits the allegations contained in Paragraph 22 of the Complaint.

23. Sockeye admits it developed a Platform Development Software for Class II gaming applications; Sockeye denies the remaining allegations contained in Paragraph 23 of the Complaint.

**Section B.**

24. Sockeye admits that Modern represented that it possessed the necessary expertise in the gaming industry to market Sockeye's Class II gaming applications and that discussions between Sockeye and Modern began in 2018. Sockeye denies the remaining allegations contained in Paragraph 24 of the Complaint.

25. Sockeye admits executing the License Agreement but denies the remaining allegations contained in Paragraph 25 of the Complaint.

26. Sockeye admits executing the License Agreement but denies the remaining allegations contained in Paragraph 26 of the Complaint.

27. Sockeye states that the terms of the License Agreement speak for themselves.

28. Sockeye states that the terms of the License Agreement speak for themselves.

29. Sockeye states that the terms of the License Agreement speak for themselves.

30. Sockeye states that the terms of the License Agreement speak for themselves.

31. Sockeye admits the allegations contained in Paragraph 31 of the Complaint.

32. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 32 of the Complaint and therefore denies.

**Section C.**

33. Sockeye denies the allegations contained in Paragraph 33 of the Complaint.

34. Sockeye denies the allegations contained in Paragraph 34 of the Complaint.

35. Sockeye admits that it developed Big Bear Poker independently of its business relationship with Modern and that it was the only Class II video poker game of its kind. Sockeye denies the remaining allegations contained in Paragraph 35 of the Complaint.

36. Sockeye denies the allegations contained in Paragraph 36 of the Complaint.

37. Sockeye denies the allegations contained in Paragraph 37 of the Complaint.

38. Sockeye denies the allegations contained in Paragraph 38 of the Complaint.

39. Sockeye lacks sufficient information to admit or deny the allegations in Paragraph 39 and therefore denies them.

**Section D.**

40. Sockeye denies the allegations contained in Paragraph 40 of the Complaint.

41. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 41 of the Complaint, and therefore denies them.

42. Sockeye admits that Empire knew of the License Agreement with Modern. Sockeye lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 42 of the Complaint, and therefore denies them.

43. Sockeye admits that it terminated the License Agreement with Modern but denies the remaining allegations contained in Paragraph 43 of the Complaint.

44. Sockeye lacks sufficient information to admit or deny the allegations contained in Paragraph 44 of the Complaint, and therefore denies them.

**Section E.**

45. Sockeye admits terminating the License Agreement with Modern and states the termination letter speaks for itself.

46. Sockeye admits terminating the License Agreement with Modern. Sockeye admits Modern had no investment obligation. Sockeye denies the remaining allegations contained in Paragraph 46 of the Complaint.

47. Sockeye admits terminating the License Agreement with Modern but denies the remaining allegations contained in Paragraph 47 of the Complaint.

48. Sockeye denies the allegations contained in Paragraph 48 of the Complaint.

49. Sockeye denies the allegations contained in Paragraph 49 of the Complaint.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract Against Sockeye**

50. Sockeye incorporates herein by reference all prior paragraphs of this Answer.

51. Sockeye admits the License Agreement was a valid and binding contract.

52. Sockeye denies the allegations contained in Paragraph 52 of the Complaint.

53. Sockeye denies the allegations contained in Paragraph 53 of the Complaint.

54. Sockeye denies the allegations contained in Paragraph 54 of the Complaint.

**SECOND CLAIM FOR RELIEF**
**Promissory Estoppel Against Sockeye – Alternative Theory of Liability**

55. Sockeye incorporates herein by reference all prior paragraphs of this Answer.

56. Sockeye denies the allegations contained in Paragraph 56 of the Complaint.

57. Sockeye denies the allegations contained in Paragraph 57 of the Complaint.

58. Sockeye denies the allegations contained in Paragraph 58 of the Complaint.

59. Sockeye denies the allegations contained in Paragraph 59 of the Complaint.

60. Sockeye denies the allegations contained in Paragraph 60 of the Complaint.

61. Sockeye denies the allegations contained in Paragraph 61 of the Complaint.

**THIRD CLAIM FOR RELIEF**
**Civil Conspiracy Against Sockeye and Empire**

62. Sockeye incorporates herein by reference all prior paragraphs of this Answer.

63. Sockeye denies the allegations contained in Paragraph 63 of the Complaint.

64. Sockeye denies the allegations contained in Paragraph 64 of the Complaint.

65. Sockeye denies the allegations contained in Paragraph 65 of the Complaint.

**FOURTH CLAIM FOR RELIEF**
**Tortious Interference with Contract Against Empire**

66. Sockeye incorporates herein by reference all prior paragraphs of this Answer.

67. Sockeye admits the Licenses Agreement to have been a valid contract, but denies the remaining allegations contained in Paragraph 67 of the Complaint.

68. Sockeye denies the allegations contained in Paragraph 68 of the Complaint.

69. Sockeye denies the allegations contained in Paragraph 69 of the Complaint.

70. Sockeye denies the allegations contained in Paragraph 70 of the Complaint.

71. Sockeye denies the allegations contained in Paragraph 71 of the Complaint.

**FIFTH CLAIM FOR RELIEF**
**Tortious Interference with Economic Advantage Against Empire**

72. Sockeye incorporates herein by reference all prior paragraphs of this Answer.

73. Sockeye denies the allegations contained in Paragraph 73 of the Complaint to the extent those allegations apply to the Fourth Claim for Relief.

74. Sockeye denies the allegations contained in Paragraph 74 of the Complaint to the extent those allegations apply to the Fourth Claim for Relief.

75. Sockeye denies the allegations contained in Paragraph 75 of the Complaint to the extent those allegations apply to the Fourth Claim for Relief.

76. Sockeye denies the allegations contained in Paragraph 76 of the Complaint to the extent those allegations apply to the Fourth Claim for Relief.

77. Sockeye denies the allegations contained in Paragraph 77 of the Complaint to the extent those allegations apply to the Fourth Claim for Relief.

**SOCKEYE SOFTWARE, LLC'S AFFIRMATIVE DEFENSES**

1. Any breach of the License Agreement by Sockeye is excused by Modern's prior breach.

2. Modern's Second and Third Claim for relief, seeking lost profits and other remedies, are barred by application of Paragraph 13.1 of the License Agreement.

3. Modern's damages under its First Claim for relief are limited by Paragraph 13.2 of the Agreement.

4. Modern's own fraudulent misrepresentations bars each of its against Sockeye.

5. The economic loss rule bars Modern's Third, Fourth, and Fifth .

**SOCKEYE SOFTWARE, LLC'S ALLEGATIONS & COUNTERCLAIMS**

1. Modern distributes electronic gaming hardware and devices. Although Modern's business focuses on Class III gaming machines, it also distributes some Class II machines.

2. Generally speaking, Class III gaming machines are "Vegas-style" slot machines or other games of chance such as poker, keno, and the like; Class III games are subject to stricter regulations than Class II games.

3. Sockeye Software Development holds US Patent No. 11,037,407 B2 (the "Platform Development Software" or "PDS"), which according the abstract, "provides games and/or gaming machines that conform to Class II regulations while providing randomness similar to Class III machines."

4. That is, Sockeye's PDS creates games that rival in excitement and would ultimately compete with Class III games even though subject to Class II regulations.

8

5. Sockeye's proprietary poker game, "Big Bear Poker," represents one such gaming application of the PDS. Sockeye fully developed Big Bear Poker independent of any business relationship with Modern.

6. Sockeye grants licenses to distributors like Modern for the purpose of placing gaming units in casinos and other gaming establishments and then generating income from licensing fees.

7. In 2018, Todd Seymour, Sockeye's CEO (and the co-inventor of the PDS), met Jason deGrandmaison from Modern's Sales Marketing and Business Development.

8. During 2018 and 2019, both deGrandmaison and Rory Fradella, Modern's President, both assured Sockeye that Modern possessed the marketing resources within the gaming industry to quickly place approximately 300 gaming units in gaming establishments in Florida, Alabama, New York, and Louisiana.

9. This statement was untrue when made because Modern either lacked the resources to effectively market Sockeye's Class II game or it intended to obtain an exclusive license for the purpose of preventing Sockeye from deploying its PDS as a competitor for Modern's more established Class III games.

10. As further inducement to Sockeye, Modern also promised to supply Sockeye with cabinets for its gaming applications in other territories.

11. Accordingly, on December 1, 2019, Sockeye and Modern executed the License Agreement, granting Modern an exclusive license within Florida, Alabama, New York, and Louisiana.

12. Modern agreed to pay Sockeye $9 per day for each gaming unit placed in Modern's territory.

13. That is, Sockeye's income from these territories depended entirely on Modern's efforts in placing Sockeye's gaming units there.

14. To ensure that Modern was properly incentivized to place gaming units as quickly as possible, the parties expressly limited Modern's damages.

15. Paragraph 13.1 provides that "[i]n no event shall [Sockeye] or its affiliates be liable for nor shall [Modern] make any claim against [Sockeye] for any special, incidental, consequential, incidental, exemplary, or punitive damages arising out of or related to this agreement or the performance or breach thereof, whether based in contract or tort …. including, but not limited to lost profits[.]"

16. Paragraph 13.2 provides that "[i]n no event shall the aggregate liability of [Sockeye] and its affiliates arising out of this Agreement and/or Distribution of the Gaming Unites and/or Distribution or License of the [intellectual property] exceed the amounts paid by [Modern] to [Sockeye] during the one (1) year period immediately preceding the date of the event giving rise to the claim[.]"

17. Paragraphs 13.1 and 13.2 are set forth in ALL CAPITAL LETTERS and both survive termination of the License Agreement (*see* Complt., Ex. 1, at ¶ 5.4).

18. Once the parties executed the License Agreement, however, Modern plainly slow-footed the placement of machines. As just one example, Modern delayed providing complete graphics information and other modifications for Big Bear Poker (i.e., to enable installation on Modern's hardware) for months. Modern also delayed or obfuscated other important steps in

placing gaming units, such as obtaining approval and opinion letters (e.g., that Big Bear Poker was a Class II game).

19. Modern intentionally delayed placement of Sockeye's gaming units in order to prevent Sockeye's units from competing with Class II and Class III games and income streams that Modern already had in place. Modern did this to maximize its own profits while preventing Sockeye from profiting from the PDS.

20. That is, Modern essentially "squatted" on the exclusive rights provided under the Licensing Agreement.

21. In 2021, as Sockeye was placing its own gaming units with relative ease in casinos in the State of Washington, Sockeye began expressing its frustrations with Modern's lack of progress within its territories.

22. Modern represented to Sockeye that Modern could use its relationship with the Chickasaw Nation to quickly place units which would in turn build some momentum within the rest of its territory.

23. Based on these assurances, on February 24, 2021, Sockeye in good faith agreed to an Amendment to the License Agreement, which expanded Modern's exclusive territory to North Carolina and to the Chickasaw Nation in Oklahoma.

24. By the end of 2021, Sockeye itself had placed gaming units in several casinos in the State of Washington. Modern, however, had placed none.

25. Modern also reneged on its promise to supply Sockeye with cabinets to use in other territories, causing Sockeye to incur additional expenses to reformat its gaming applications for other cabinets.

26. By 2022, Sockeye had entered into negotiations with Empire Technology Group to license the PDS throughout the remainder of the United States. Sockeye, in good faith, informed Modern of these negotiations.

27. In February 2022, Sockeye discovered that Modern had built out only 9 cabinets for Sockeye's gaming units. This number was significantly less than the 270 cabinets originally identified and less than even the revised 200 cabinets Modern said it had reserved for Sockeye's games. That is, during the two years of its exclusive license, Modern had placed exactly zero machines and had significantly misrepresented the number of machines it could place within its territory in any reasonable period of time.

28. On February 24, 2023, Sockeye terminated the License Agreement.

29. Sockeye subsequently granted licenses to Empire Technology Group to exploit the PDS within Modern's former territory.

**FIRST COUNTERCLAIM**
**Breach of Contract**

30. Sockeye incorporates Counterclaim Paragraphs 1-29 as if fully set forth here.

31. The License Agreement represents a valid contract under which Sockeye granted Modern an exclusive license to use the PDS within Florida, Alabama, New York, and Louisiana, and later including North Carolina and the Chickasaw Nation in Oklahoma.

32. As an exclusive licensee, Modern, at a minimum, owed a duty of good faith and fair dealing to Sockeye to use reasonable efforts and/or best efforts to exploit the PDS and to place gaming units in Modern's exclusive territory.

33. Modern breached this obligation by, among other things, delaying deployment for two years and misrepresenting to Sockeye the number of gaming units ready for deployment.

34. Modern intentionally failed to exploit its exclusive license because the PDS would compete with Class II and Class III games, as well as other income streams, Modern already had in place.

35. Sockeye fully performed under the License Agreement until terminating the License Agreement as a result of Modern's prior breach.

36. As a result of Modern's breach of the License Agreement, Sockeye has sustained injuries in an amount to be proven at trial.

## SECOND COUNTERCLAIM
### Promissory Estoppel

37. Sockeye incorporates Counterclaim Paragraphs 1-29 as if fully set forth here.

38. As an inducement for the License Agreement, Modern promised Sockeye that Modern would provide Sockeye with gaming cabinets for use outside of Modern's exclusive territory.

39. Modern reasonably expected Sockeye to rely on this promise and that the promise would induce action from Sockeye.

40. Sockeye relied on this promise by, *inter alia*, investing time, money and resources adapting its gaming applications for Modern's cabinets.

41. When Sockeye requested the cabinets from Modern, it refused to provide them.

42. Modern's refusal to honor its promises caused Sockeye damages and those promises must be enforced to prevent injustice.

## THIRD COUNTERCLAIM
### Fraud in the Inducement—Alternative Theory of Relief

43. Sockeye incorporates Counterclaim Paragraphs 1-29 as if fully set forth here.

44. Modern, through Messrs. deGrandmaison and Fradella, represented to Sockeye that

it possessed the personnel, marketing resources, and expertise to place Sockeye's Class II gaming units in gaming establishments within the exclusive territories.

45. Modern represented to Sockeye that it had 270 cabinets available for Sockeye's gaming units.

46. Both statements were material to Sockeye, and Sockeye justifiably relied on them in executing the License Agreement.

47. Both statements, however, were untrue when Modern made them and Modern knew them to be untrue but made the statements in order to induce Sockeye into granting Modern an exclusive territory.

48. Sockeye has suffered damages as a result of Modern's misrepresentation, permitting Sockeye to either avoid the License Agreement or obtain damages in an amount to be determined at trial.

## **JURY DEMANDED**

49. Sockeye demands a trial by jury of all issues so triable under Rule 38 of the Federal Rules of Civil Procedure.

[The remainder of this page left intentionally blank.]

**WHEREFORE**, Sockeye requests that this Court enter judgment in their favor and against Modern Gaming, Inc. as follows:

   A.   Damages in an amount to be determined at trial;

   B.   Attorney's fees and costs as permitted under Colorado law and any other applicable agreement providing for an award of attorneys' fees and costs;

   C.   Pre and post-judgment interest at the maximum rate allowable by law; and

   D.   Such other relief that as may be appropriate.


Dated this day of October 20, 2023.        Respectfully submitted,

*s/ Leah E. Capritta*
Leah E. Capritta, #32087
Holland & Knight LLP
1801 California Street, Suite 5000
Denver, CO 80202
(303) 974-6660
Email: leah.capritta@hklaw.com
*Counsel for Defendant Sockeye Software, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to all counsel referenced below, dated this day of October 20, 2023.

| | |
|---|---|
| Kathryn A. Reilly<br>Jacob A. Rey<br>Wheeler Trigg O'Donnell LLP<br>370 Seventeenth Street, Suite 4500<br>Denver, CO 80202<br>*Attorney for Plaintiff* | Shannon M. Bell<br>Kelly Law Partners<br>501 S. Cherry Street, Ste 1100<br>Denver, CO 80246<br>*Attorney for Defendant Empire* |

                                          */s/ Alanna Moore*
                                          Alanna Moore