IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01583-PAB-STV

MODERN GAMING, INC.,

    Plaintiff,

v.

SOCKEYE SOFTWARE, LLC, and

    Defendant.

---

**ORDER**

---

This matter comes before the Court on the Motion to Set Aside Magistrate Judge's Ruling Permitting Amendment of Pleadings [Docket No. 132], filed by defendant Sockeye Software, LLC ("Sockeye"),[1] Sockeye Software's Motion for Summary Judgment on Modern Gaming's Claim for Lost Profits, Goodwill, and Exemplary Damages [Docket No. 158],[2] Plaintiff's Motion for Determination of Law on the Limitation of Liability Clause [Docket No. 163],[3] and Defendant Sockeye Software, LLC's Motion to Exclude Testimony of Scott Molina [Docket No. 159].[4]  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] Plaintiff Modern Gaming, Inc. ("Modern") filed a response, Docket No. 167, and Sockeye filed a reply.  Docket No. 187.
[2] Modern filed a response, Docket No. 203, and Sockeye filed a reply.  Docket No. 232.
[3] Sockeye filed a response, Docket No. 224, and Modern filed a reply.  Docket No. 238.
[4] Modern filed a response, Docket No. 207, and Sockeye filed a reply.  Docket No. 234.

I. **BACKGROUND**

    A. <u>**Procedural Background**</u>

On June 21, 2023, Modern filed a complaint against Sockeye and Empire in the District of Colorado. Docket No. 1. The complaint asserted breach of contract and promissory estoppel claims against Sockeye, tortious interference with contract and intentional interference with prospective economic advantage claims against Empire, and a civil conspiracy claim against both defendants. *Id.* at 11-15.

On August 24, 2023, Empire filed an answer as well as a crossclaim against Sockeye for breach of contract, fraudulent or negligence inducement, and indemnification. Docket No. 19. On October 11, 2023, Sockeye filed an answer as well as counterclaims against Modern for breach of contract, promissory estoppel, and fraud in the inducement. Docket No. 35. On October 20, 2023, Sockeye filed an amended answer and counterclaims. Docket No. 46. On October 27, 2023, Modern filed an answer to Sockeye's counterclaims. Docket No. 47. On December 12, 2023, before Sockeye responded to the crossclaims, Empire voluntarily dismissed its crossclaims without prejudice. Docket No. 51 at 1.

On October 18, 2023, Magistrate Judge Scott T. Varholak entered a scheduling order setting the discovery cut-off deadline for July 19, 2024. Docket No. 44 at 18. After extensions, Judge Varholak ordered that discovery would end on March 14, 2025. Docket No. 85.

On February 14, 2025, Modern filed a motion seeking to amend its complaint to add a claim for exemplary damages. Docket No. 86. On March 18, 2025, Judge Varholak held a hearing and granted Modern's motion to amend the complaint. Docket

2

No. 119 at 1. The same day, Modern filed its amended complaint. Docket No. 118. The amended complaint contains the same claims as the original complaint. *Compare* Docket No. 1 *with* Docket No. 118. Sockeye filed an objection pursuant to Federal Rule of Civil Procedure 72(a) regarding Judge Varholak's order permitting Modern to file an amended complaint. Docket No. 132.

Sockeye and Empire each filed motions for summary judgment on Modern's claims. Docket No. 161; Docket No. 180. On January 13, 2026, the Court issued an order granting Empire's motion for summary judgment on all three claims against it. *See* Docket No. 254 at 22-23. Modern and Empire had argued as to whether Modern's claims against Empire were governed by Louisiana or Nevada law. *Id.* at 2. The Court's order explained why Modern's claims against Empire failed under either Louisiana law or Nevada law. *Id.* at 10-22. In evaluating the claims under Nevada law, the Court found that Modern's assertions of lost profit damages were too speculative to support a claim. *Id.* at 13-22. The Court noted that Colorado law, which governed the claims between Modern and Sockeye, used the same standard as Nevada law. *Id.* at 21 n.18. Sockeye's motion for summary judgment did not, however, make the same argument as Empire regarding lost profit damages. *Id.*

Although Sockeye successfully argued for summary judgment on the promissory estoppel and civil conspiracy claims against it, *see* Docket No. 255 at 13-16, the Court rejected Sockeye's arguments for summary judgment on the breach of contract claim. *Id.* at 7-13.

The contract between Modern and Sockeye that is the subject of Modern's breach of contract claim contains a limitation of liability provision. Docket No. 158 at 1.

3

Sockeye has filed a motion for summary judgment seeking summary judgment on Modern's claim for lost profits, loss of goodwill, and exemplary damages. Docket No. 158. Modern has filed a motion for determination of law as to the enforceability of that contract provision.[5] Docket No. 163.

### B. Undisputed Facts[6]

On December 1, 2019, Sockeye and Modern executed the License Agreement. Docket No. 158 at 3, ¶ 10. Paragraph 13.1 of the License Agreement states, in capital letters, that:

> IN NO EVENT SHALL LICENSOR OR ITS AFFILIATES BE LIABLE FOR NOR SHALL LICENSEE MAKE ANY CLAIM AGAINST LICENSOR FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY, OR PUNITIVE DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE PERFORMANCE OR BREACH THEREOF, WHETHER BASED IN CONTRACT, TORT (INCLUDING WITHOUT LIMITATION NEGLIGENCE OR STRICT LIABILITY) OR OTHERWISE AND EVEN IF LICENSOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING BUT NOT LIMITED TO LOST PROFITS OR SAVINGS, LABOR CHARGES, DOWNTIME COSTS, DAMAGES AND EXPENSES ARISING OUT OF CUSTOMER OR OTHER THIRD-PARTY CLAIMS OR ANY LOSS TO DISTRIBUTOR'S BUSINESS OR GOODWILL.

Docket No. 163 at 3, ¶ 3 (citing Docket No. 163-4 at 15). Sockeye was advised by an attorney in reviewing the License Agreement. Docket No. 158 at 2-3, ¶¶ 5-6. Modern

---

[5] There is no procedural rule providing for a motion for determination of law. *Boulter v. Kerr-McGee Oil & Gas Onshore, LP*, No. 24-cv-01459-SKC-KAS, 2025 WL 2639206, at *1 (D. Colo. Sept. 12, 2025). Therefore, courts tend to treat these motions as either motions for partial summary judgment, partial declaratory judgment, or as motions in limine. *Id.* Here, the Court treated the motion as a motion for partial summary judgment. Docket No. 149 (striking the motion for Modern's failure to comply with the Court's practice standards for filing summary judgment motions).

[6] The following facts are undisputed unless otherwise noted. As stated by Modern, "[t]he only truly material fact (which is undisputed) is that Modern and Sockeye executed the License Agreement, which contains the contract language at issue." Docket No. 163 at 3 n.2.

4

admitted that it could access attorneys if it needed assistance in assessing its risk with the License Agreement. *Id.* at 3, ¶ 10.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of

each element essential to the case." *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

Resolution of the parties' motions depends upon an interpretation of the License Agreement and a consideration of the limitation of liability clause's enforceability.

Contract interpretation is a question of law to be resolved by the court.  *See, e.g.*, *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1080 (10th Cir. 2001) ("In general, the interpretation of a contract is a question of law.") (citing *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984)).  Colorado courts[7] apply traditional principles of contract interpretation.  *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).  Courts are to give effect to the intent of the parties and to enforce the contract's plain language unless it is ambiguous.  *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007).  A "court should interpret a contract 'in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless.'"  *Copper Mountain, Inc. v. Industrial Systems, Inc.*, 208 P.3d 692, 697 (Colo. 2009).  If the language of the contract is unambiguous, a court will enforce the plain meaning of the contract's terms.  *Est. of Christensen v. Vail Mountain View Residences Phase II, LLC*, 2025 WL 869636, at *3 (Colo. App. Mar. 20, 2025).

---

[7] Modern and Sockeye agree that Colorado law governs the interpretation of the License Agreement, which states that the agreement and "performance hereunder" is governed by Colorado law.  *See* Docket No. 158-3 at 12, § 13.10.

### A. Interpretation of the Limitation of Liability Clause

Paragraph 13 of the License Agreement is labeled LIMITATION OF LIABILITY, indicating that the parties agreed to contractually allocate the risks of certain consequences that could arise from their agreement. Docket No. 163 at 3, ¶ 3 (citing Docket No. 163-4 at 15). Paragraph 13.1 states, in pertinent part, that "IN NO EVENT SHALL LICENSOR . . . BE LIABLE FOR NOR SHALL LICENSEE MAKE ANY CLAIM AGAINST LICENSOR FOR ANY . . . EXEMPLARY, OR PUNITIVE DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT . . . WHETHER BASED IN CONTRACT, TORT (INCLUDING WITHOUT LIMITATION NEGLIGENCE OR STRICT LIABILITY) OR OTHERWISE . . ., INCLUDING BUT NOT LIMITED TO LOST PROFITS . . . OR ANY LOSS TO DISTRIBUTOR'S . . . GOODWILL." *Id.* The language of the paragraph is broad ("in no event," "arising out of or relating to this agreement," "including but not limited to") and in plain language states that Sockeye is not liable for exemplary damages, lost profits, or loss of goodwill.[8] *Id.* The parties do not dispute the plain language of the clause, but instead focus on the enforceability of the clause.

### B. Enforceability of the Limitation of Liability Clause

In arguing that the limitation of liability clause is enforceable against Modern, Docket No. 158 at 7-15; Docket No. 224 at 5-15, Sockeye relies on the Tenth Circuit's two rulings in *SolidFX, LLC v. Jeppesen Sanderson, Inc. See* Docket No. 158 at 8-15 (citing *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827 (10th Cir. 2016), and

---

[8] Paragraph 13.1 refers to a "distributor's" loss of goodwill. Docket No. 163 at 3, ¶ 3 (citing Docket No. 163-4 at 15). The parties do not address the distinction between the terms "distributor" and "licensee." However, both parties' briefs contemplate Modern being the party seeking damages for loss of goodwill, *see, e.g.*, Docket No. 158 at 1; Docket No. 203 at 5, ¶ 23, and the Court sees no reason to interpret the contract's use of the term "distributor" to refer to someone other than Modern.

7

*SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 823 F. App'x 559 (10th Cir. 2020) (unpublished)). Sockeye argues that the facts in *SolidFX* are similar to the facts of this case, and that the Tenth Circuit's rulings in *SolidFX* control the outcome here. *See id.* at 7-15.

Modern, however, argues that the *SolidFX* cases did not address the enforceability issues relevant to this case and that various rulings from Colorado courts support the proposition that Colorado public policy voids limitation of liability provisions when the relevant breach of conduct involves willful or wanton conduct by the plaintiff. Docket No. 163 at 6-15; Docket No. 203 at 7-14.

The Court agrees with Sockeye that the Tenth Circuit holdings in *SolidFX* govern the issues here. In *SolidFX*, the plaintiff and the defendant contracted for plaintiff to develop a device for airplane pilots that used e-book reader technology to display defendant's maps of airports. *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1075-76 (D. Colo. 2013). Shortly after reaching the agreement, Apple Corporation released the first version of the iPad. *Id.* Plaintiff sought to place defendant's maps on an iPad application. *Id.* at 1077. Although a representative of defendant acknowledged that the contract between the parties would permit development of the iPad application, defendant refused to provide the maps and instead developed its own iPad application. *Id.* Plaintiff sued defendant for breach of contract, among other claims, and sought damages for lost profits. *Id.* at 1078, 1091. The parties' contract, however, contained a limitation of liability clause stating that plaintiff could not seek lost profit damages or exemplary damages from defendant. *Id.* at 1091.

At the summary judgment stage, defendant sought a ruling on the enforceability of the limitation of liability clause. *Id.* The district found the contractual language ambiguous and declined to rule on the enforceability of the clause. *Id.* at 1091-92. The case went to trial and, at the close of evidence, defendant again moved the court to interpret relevant provision. *SolidFX, LLC*, 841 F.3d at 831-32. The district court found that the provision allowed the recovery of lost profits that could be considered direct damages, but not lost profits that were consequential damages. *Id.* The jury awarded a substantial verdict in plaintiff's favor. *Id.* at 832.

On appeal, the Tenth Circuit held that the limitation of liability clause barred plaintiff from recovering lost profits or exemplary damages. *Id.* at 833-841. After remand, plaintiff argued that, while the Tenth Circuit had held that the relevant clause might have, in general, been enforceable, the Tenth Circuit had failed to consider whether the clause would be enforceable even if a jury found that defendant's breach of contract was willful or wanton. *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-1468-WJM-BNB, 2018 WL 803663, at *3-4 (D. Colo. Feb. 9, 2018). The district court, applying the mandate rule, found that the scope of the Tenth Circuit's ruling on the enforceability of the clause was broad enough to cover plaintiff's willful and wanton argument, and that the district court was therefore bound by the Tenth Circuit's ruling. *Id.* at *3-7. Plaintiff appealed to the Tenth Circuit. *SolidFX, LLC*, 823 F. App'x at 561. The Tenth Circuit affirmed the district court, explaining that the Tenth Circuit had held that, because of the limitation of liability clause, "[plaintiff] was contractually precluded from recovering the amounts awarded for lost profits." *Id.* at 566. The court also cited language from its prior order stating that there is "no public policy against enforcement

9

of limited liability clauses for abandonment of a contractual obligation, even if deliberate." *Id.* (citation omitted). Finally, the court noted that, "[u]nder Colorado law, sophisticated parties allocate risk for themselves." *Id.* (citing *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 871 (Colo. 2002)).

The Court finds that Modern and Sockeye are sophisticated parties – corporate entities who either received or could have received legal advice in negotiating the License Agreement. Docket No. 158 at 2-3, ¶¶ 5-6, 10. Given that, and given the similarities between the limitation of liability provisions in the *SolidFX* contract and in the License Agreement here, the Court finds that the Tenth Circuit's holdings in *SolidFX* govern the enforceability of the limitation of liability clause. Paragraph 13.1 of the License Agreement is thus enforceable and bars Modern from seeking lost profit damages, exemplary damages, or loss of goodwill damages from Sockeye. The Court will therefore grant Sockeye's motion for summary judgment on these aspects of Modern's remaining breach of contract claim against Sockeye and deny Modern's motion for determination of law.

### C. Objection to Magistrate Judge's Order

Sockeye's objection to Judge Varholak's ruling is based on Judge Varholak's decision to allow Modern to amend its complaint to seek exemplary damages from Sockeye. *See* Docket No. 132 at 2. As the Court has now found that Modern cannot seek exemplary damages from Sockeye, the Court will overrule the objection as moot.

### D. Rule 702 Motion to Exclude Opinions of Scott Molina

Modern designated Scott Molina to testify as an expert on the gaming industry. Docket No. 197 at 35. Mr. Molina's expert report opines that Modern would have been successful distributing Sockeye's Big Bear Poker product in various jurisdictions, and

thus that Modern suffered lost profit damages. *See generally* Docket No. 159-1. Sockeye's Rule 702 motion offers various reasons why Mr. Molina's opinions about Modern's supposed lost profits should be excluded from trial. *See* Docket No. 159 at 5-15. The Court's order on Empire's motion for summary judgment discussed why Mr. Molina would be precluded under Rule 702 from offering his opinions on Modern's lost profits in various states. Docket No. 254 at 16-20. The Court has now barred Modern from seeking lost profit damages. Given those two rulings, the Court will deny Sockeye's Rule 702 motion, Docket No. 159, as moot.

## IV. CONCLUSION

It is therefore

**ORDERED** that Sockeye Software's Motion for Summary Judgment on Modern Gaming's Claim for Lost Profits, Goodwill, and Exemplary Damages [Docket No. 158] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion for Determination of Law on the Limitation of Liability Clause [Docket No. 163] is **DENIED**. It is further

**ORDERED** that the Motion to Set Aside Magistrate Judge's Ruling Permitting Amendment of Pleadings [Docket No. 132] is **DENIED as moot**. It is further

**ORDERED** that Defendant Sockeye Software, LLC's Motion to Exclude Testimony of Scott Molina [Docket No. 159] is **DENIED as moot**.

DATED March 2, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge