IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01583-PAB-STV

MODERN GAMING, INC.,

    Plaintiff,

v.

SOCKEYE SOFTWARE, LLC, and,

    Defendant.

---

# ORDER

---

This matter comes before the Court on Plaintiff's Motion for Summary Judgment on all Counterclaims [Docket No. 156]. Plaintiff Modern Gaming, Inc. ("Modern") seeks summary judgment pursuant to Federal Rule of Civil Procedure 56 on the counterclaims brought against it by defendant Sockeye Software, LLC ("Sockeye") for promissory estoppel, breach of the implied covenant of good faith and fair dealing, and fraud in the inducement. Docket No. 156 at 1-3. Sockeye filed a response. Docket No. 208. Modern filed a reply. Docket No. 230. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. UNDISPUTED FACTS

Modern manufactures and distributes computerized gaming devices to casinos. Docket No. 156 at 3, ¶ 1.[1] Sockeye develops gaming software. *Id.*, ¶ 2. Modern's

---

[1] Sockeye denies this fact in part, stating that, "[s]ince at least 2013, Modern has manufactured and distributed gaming devices exclusively in the Louisiana VLT market."

owner, Rory Fradella, and Modern's Chief Operating Officer, Jason deGrandmaison, have each worked in the gaming industry for decades. *Id.*, ¶ 3. Modern has placed over 3,400 video poker gaming units in the Louisiana video poker gaming market as of 2025. *Id.*, ¶ 4.[2] Modern has historically expanded to support business opportunities as they arose. *Id.*, ¶ 5.[3] Prior to the 2019 License Agreement, Modern had done business with casinos in various states, including Florida and Alabama. *Id.*, ¶ 6.[4]

In 2018, Sockeye was developing Big Bear Poker ("BBP"), a video poker game using its software. *Id.*, ¶ 7.[5] Mr. Seymour approached Modern about an opportunity to

---

Docket No. 208 at 2, ¶ 1. The Court finds this nonresponsive to the fact asserted and deems this fact admitted.

[2] Sockeye denies this fact, stating that "Modern has placed fewer than 3,400 gaming devices in Louisiana since 2013, inclusive of machines that have been retired, are obsolete, or otherwise unaccounted for." Docket No. 208 at 2, ¶ 4. The chart Sockeye cites as evidence of this dispute goes back only as far as 2015. *See* Docket No. 208-3 at 2. The Court finds this objection nonresponsive and deems the fact admitted. The exact number of machines placed by Modern is not material to the Court's analysis.

[3] Sockeye disputes this fact in a lengthy statement about Modern's ability to do business in the New York market. Docket No. 208 at 2-3, ¶ 5. The Court finds this nonresponsive to the fact asserted and deems this fact admitted.

[4] Sockeye disputes this fact, stating that "Sockeye incorporates [the response discussed in the prior footnote regarding the New York market]. In addition, prior to 2013, Modern had sold 'some' neutered machines to Victoryland (Alabama) but could not testify about its business in Florida." Docket No. 208 at 3, ¶ 6. The Court has reviewed the portion of the deposition cited by both Modern and Sockeye and find that it supports Modern's assertion and does not support Sockeye's effort to dispute the fact. *See* Docket No. 208-1 at 29-31, 121:16-123:13. Mr. deGrandmaison testified about Modern's history of doing business in Florida and Alabama. *Id.* The fact that Mr. deGrandmaison did not know all of the details about past business in Florida, *see id.*, is not the same as "not testify[ing]" about it.

[5] Sockeye disputes this fact in part, stating that "Big Bear Poker is not a 'video poker game using its Software,' which Modern defines as 'Sockeye's patented platform development software.' Sockeye's Platform Development Software, as defined in the Agreement, is not patented and is distinct from its patented mathematical formulae." Docket No. 208 at 3, ¶ 7 (internal citation omitted). The parties litigated their disagreements regarding terminology such as "software" and "platform development software" in their briefing on Sockeye's motion for summary judgment on Modern's

2

place games based on Sockeye's software.  *Id.* at 3-4, ¶ 8.[6]  Modern and Sockeye entered into a "License Agreement" on December 3, 2019.  *Id.* at 4, ¶ 10.  The License Agreement, as amended, granted Modern an exclusive license to use Sockeye's Software in Florida, Alabama, New York, Louisiana, North Carolina, and the Chickasaw Nation in Oklahoma.  *Id.*, ¶ 11.[7]  The License Agreement states that Sockeye "grants to [Modern] . . . a license to use the [software] as indicated in this Agreement and subject to the terms of this Agreement."  *Id.*, ¶ 12.[8]

Before the License Agreement was in place, from at least April through October 2019, Modern initiated and maintained conversations with contacts in the New York gaming market to discuss the potential to place BBP in New York.  *Id.* at 5, ¶ 17.[9]  Modern's contacts in the New York gaming market provided Modern a copy of a draft

---

claims against it.  *See, e.g.*, Docket No. 255 at 2-4, 7-13.  The Court interpreted the contract and determined that, whatever the exact terminology was in the License Agreement, the parties had contracted to give Modern the right to distribute Big Bear Poker.  *See id.* at 7-13.  The Court will not revisit those issues here, especially since the terminology disputes ultimately do not impact the Court's analysis of the issues presented here.  The Court deems this fact admitted.

[6] Sockeye disputes this fact in part, stating that "Sockeye disputes Modern's definition of "Software."  Docket No. 208 at 3, ¶ 8.  For the reasons discussed in footnote 5, the Court deems this fact admitted.

[7] Sockeye disputes this fact in part, stating that, "[t]he License Agreement granted Modern an exclusive license to use the PDS, as defined in the Agreement, in the listed territories. . . .  Sockeye disputes Modern's definition of 'Software.'"  Docket No. 208 at 4, ¶ 11.  For the reasons discussed in footnote 5, the Court deems this fact admitted.

[8] Sockeye disputes this fact, stating that "Section 2.1 reads: '[Sockeye] grants to [Modern] . . . a license to use the PDS [Platform Development Software] as indicated in this Agreement and subject to the terms of this Agreement (emphasis added).'; the section does not refer generally to 'software.'"  Docket No. 208 at 4, ¶ 12.  For the reasons discussed in footnote 5, the Court deems this fact admitted.

[9] Sockeye disputes this fact in part, stating that "Jason deGrandmaison contacted Scott Molina and two other employees."  Docket No. 208 at 4, ¶ 17.  The Court finds this nonresponsive to the fact asserted and deems this fact admitted.

3

response for a Request for Proposal in July 2019.  *Id.*, ¶ 18.[10]  Modern informed Sockeye of this upcoming Request for Proposals.  *Id.*  On October 20, 2019, one of Modern's contacts in the New York gaming market, Scott Molina, emailed Modern stating:

> I'm heading to Albany/Schenectady for my Monday meeting. As discussed, I'll be discussing our revenue enhancements initiative (including video poker) with the Gaming Commission.  My preference is traditional video poker, but I'm prepared to discuss Kodiak Skill-Based Poker as a backup option/strategy if I'm challenged on the jurisdictional issue.  I'll call you if I have any questions.

*Id.*, ¶ 19.[11]

While the License Agreement was in effect, on February 8, 2022, Sockeye entered into an agreement with Empire Technological Group, Ltd. ("Empire") that gave Empire an exclusive license to use Sockeye's Software in Modern's territories.  *Id.* at 7, ¶ 32.[12]  On March 14, 2022, Sockeye sent Modern a notice of termination of the License Agreement, dated February 23, 2022.  *Id.*, ¶ 33.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the

---

[10] Sockeye disputes this fact in part, stating that "Resorts World advised that it had provided suggestions to the New York Gaming Commission ("NYGC") regarding a Request for Proposals ("RFP") for new vendors."  Docket No. 208 at 4, ¶ 18.  The Court finds this nonresponsive to the fact asserted and deems this fact admitted.

[11] Sockeye denies this fact in part, stating that "Mr. Molina is now Modern's compensated, retained expert."  Docket No. 208 at 5, ¶ 19.  The Court finds this nonresponsive to the fact asserted and deems this fact admitted.

[12] Sockeye denies this fact in part, stating that "[t]he agreement with Empire (the "Empire License") granted a license to 'Lease the Gaming Software' and to 'Sell, distribute, Lease, promote, market and advertise the Products and Gaming Software,' but does not expressly call out the PDS and defines 'Gaming Software' differently than the Agreement."  Docket No. 208 at 6, ¶ 32.  For the reasons discussed in footnote 5, the Court deems this fact admitted.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Sockeye brings three counterclaims against Modern: promissory estoppel, breach of the implied covenant of good faith and fair dealing, and fraud in the inducement. Docket No. 172 at 18-20, ¶¶ 40- 58. Modern seeks summary judgment on all three claims. Docket No. 156 at 1-3.

### A. Promissory Estoppel

Under Colorado law,[13] the elements of a claim for promissory estoppel are "(1) a promise; (2) that the promisor reasonably should have expected would induce action or forbearance by the promisee or a third party; (3) on which the promisee or third party reasonably and detrimentally relied; and (4) that must be enforced in order to prevent injustice." *Pinnacol Assurance v. Hoff*, 375 P.3d 1214, 1221 (Colo. 2016). The promise must be "clear and unambiguous." *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 114 (Colo. App. 1994). "[T]he promise must be sufficiently specific to 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Soderlun v. Pub. Serv. Co. of Colorado*, 944 P.2d 616, 620 (Colo. App. 1997) (quoting Restatement (Second) of Contracts §§ 33(1), (2) (1981)). This specificity is required so that "the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Id*.

The counterclaim alleges that "Modern promised Sockeye that Modern would provide Sockeye with gaming cabinets for use outside of Modern's exclusive territory." Docket No. 172 at 19, ¶ 48. Modern argues that the promissory estoppel claim should

---

[13] The parties appear to agree that Colorado law applies to Sockeye's counterclaims. The Court will operate under the same premise. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

6

be dismissed because "it is undisputed that this alleged promise, to the extent it actually occurred, did not contain specific and enforceable terms." Docket No. 156 at 10 (emphasis omitted). Sockeye responds that the promise at issue is the promise by Modern that it possessed 270 cabinets available for use with Sockeye's software, to be provided on commercially reasonable terms using either a revenue-share or per-day fee. Docket No. 208 at 14. Sockeye argues that this promise is sufficiently specific to be enforceable. *Id.*

The Court finds that Sockeye has failed to adduce evidence of the promise. The closest Sockeye comes to doing so is offering, in the "Additional Undisputed Material Facts" section of its brief, the fact that, "[b]efore signing the Agreement, Modern told Sockeye that it possessed 270 gaming cabinets ready for use with Sockeye's products and that it could 'quickly' place them in the exclusive territories." *Id*. at 7, ¶ 3. First, the portion of the record cited by Sockeye does not support the asserted fact. *See* Docket No. 208-7 at 11, 452:4-25. Thus, Sockeye has failed to create a genuine dispute of material fact as to the existence of the promise by failing to cite evidence in support of the asserted fact. *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v. ("[e]ach separately numbered and paragraphed fact shall be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed."); *see also In re HomeAdvisor, Inc. Litig.*, No. 16-cv-01849-PAB-KAS, 2024 WL 4187099, at *6 (D. Colo. Sept. 13, 2024). Second, even if the fact were supported, the asserted fact appears to contemplate the use of Modern's gaming cabinets for placement in the exclusive territories of the License Agreement, rather than for use, as asserted in the counterclaim, "outside of Modern's exclusive

7

territory."  *Compare* Docket No. 208 at 7, ¶ 3, *with* Docket No. 172 at 19, ¶ 48.  Third, even putting these issues aside, Sockeye fails to identify any promise by Modern to provide the cabinets on "commercially reasonable terms" that is sufficiently specific to "provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *Soderlun*, 944 P.2d at 620.

The Court will therefore dismiss with prejudice Sockeye's promissory estoppel counterclaim.

### B. Implied Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing exists in every contract to enforce the reasonable expectations of the parties."  *Veolia Water Technologies, Inc. v. Antero Treatment LLC*, 564 P.3d 1089, 1109 (Colo. App. 2024) (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 499 (Colo. 1995)).  As noted in *Veolia Water*:

> The duty specifically applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time.  A party breaches the implied duty of good faith and fair dealing by using the discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract.

*Id.* (internal quotations, alterations, and citations omitted).  "Discretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation."  *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 967 (Colo. App. 2015) (quoting *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006)).

Sockeye does not identify terms in the License Agreement that reserve material issues such as quantity, price, or time to Modern's discretion.  Instead, the specific provision identified by Sockeye grants Modern an exclusive license to "use [Sockeye's

Platform Development Software]." Docket No. 208 at 12. From this provision and from a lack of performance metrics in the License Agreement, Sockeye infers "an implied duty to use best or good faith efforts when the primary payment for an exclusive license is in the form of payment of royalties." *Id.* Sockeye cites two federal cases from the 1970s applying New York law in support. *Id.* (citing *E. Elec., Inc. v. Seeburg Corp.*, 427 F.2d 23, 25 (2d Cir. 1970), and *Vacuum Concrete Corp. of Am. v. Am. Mach. & Foundry Co.*, 321 F. Supp. 771, 773 (S.D.N.Y. 1971)). In both cases, the courts rejected the existence of such a duty. *E. Elec.*, 427 F.2d at 28; *Vacuum Concrete*, 321 F. Supp. at 774.

Sockeye cites no Colorado law in support of this argument, and the Court has not identified any. The Court finds that Sockeye fails to identify a provision that delegates the discretion to Modern to determine a material term of the contract and fails to cite any authority supporting an implied duty for Modern to use best efforts when it has an exclusive license but no performance metrics are specified in the contract. Thus, Sockeye has failed to create a genuine dispute of material fact as to whether Modern breached the covenant of good faith and fair dealing and will dismiss that counterclaim with prejudice.

### C. Fraud in the Inducement

For a fraudulent inducement claim under Colorado law, a plaintiff must establish: (1) the defendant made a knowing misrepresentation of a material fact; (2) the plaintiff relied on the material misrepresentation; (3) the plaintiff was justified in relying on the misrepresentation; and (4) the plaintiff suffered damages as a result of that reliance. *Bonanno v. The Quizno's Franchise Co.*, LLC, No. 06-cv-02358-WYD-KLM, 2008 WL 638367, at *5 (D. Colo. Mar. 5, 2008); *Found. Learning LLC v. Acad., Arts, & Action*

9

*Charter Acad.*, No. 17-cv-03182-RM-KLM, 2019 WL 1077316, at *2 (D. Colo. Mar. 7, 2019).

Sockeye identifies three instances where Modern allegedly made misrepresentations to Sockeye that induced Sockeye to sign the License Agreement.[14] Docket No. 208 at 10-11.  The first allegation is that Modern misrepresented to Sockeye that Resorts World New York wanted to use Sockeye's software as part of its proposal to the New York Gaming Commission.  *Id.* at 6-7, 10.  The second is that Modern misrepresented to Sockeye whether Modern had 270 cabinets available for use with Sockeye's products.  *Id.* at 10.  The third is that Modern misrepresented to Sockeye whether Modern had the capabilities to place units in New York, Alabama, and Florida.  *Id.* at 11.

Modern argues that the counterclaim must be dismissed because, "[e]ven assuming Modern actually made these representations, Sockeye has no evidence that Modern intentionally made them . . . knowing them to be false."  Docket No. 156 at 14.

As to the first allegation, Sockeye has identified no evidence of a knowing misrepresentation of material fact regarding whether there was an opportunity to place Sockeye units in the New York market.  Sockeye identifies evidence that Modern informed Sockeye about a business opportunity in New York.  Docket No. 208 at 6-7, ¶ 1.  According to this asserted fact, Modern represented to Sockeye that Resorts World

---

[14] Modern's motion anticipates Sockeye relying on five alleged misrepresentations.  Docket No. 156 at 14-16.  Sockeye's response discusses only three of the five misrepresentations identified by Modern.  Docket No. 208 at 10-11.  The Court therefore will not consider the other two alleged misrepresentations.

10

New York had engaged a lobbyist at a cost of $25,000 per month in order to support a bid to place 3,000 to 4,000 machines in New York.  *Id.*

Sockeye does not, in its statement of additional undisputed facts, assert any facts showing that these representations about Resorts World were false.  *See, e.g.*, *In re HomeAdvisor, Inc. Litig.*, 2024 WL 4187099, at *6 (discussing the Court's practice standards); *see also* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v).  However, Sockeye does cite, in support of its assertion that "Sockeye believed Modern's misrepresentations about Resorts World," *see* Docket No. 208 at 6-7, ¶ 1, a portion of Mr. Seymour's deposition testimony wherein he repeatedly asserts his belief that Modern's representations about the Resorts World opportunity were false.  *See id.* (citing Docket No. 208-8 at 10-12, 359:1-361:19).  The statements made by Mr. Seymour are not, however, admissible evidence.  Some of his testimony is based on hearsay, such as Mr. Seymour's recounting of Mr. deGrandmaison's deposition testimony.  *See id.* at 10, 359:19-23.  In other parts of the testimony, Mr. Seymour offers opinions about the truthfulness of Modern's representations based on his review of discovery, which lack personal knowledge, rely on speculation, and, even if offered under Fed. R. Evid. 702, lack reliability.  *See, e.g.*, *id.* at 11, 360:4-24.  The Court finds these statements are inadmissible and will not consider them on summary judgment.  *See Bullock v. Wayne,* 623 F. Supp. 2d 1247, 1252 (D. Colo. 2009) (a "court may not consider all proffered evidence when ruling on a summary judgment motion; only admissible evidence may enter the analysis."); *see also Law Co., Inc. v. Mohawk Const. and Supply Co., Inc.*, 577 F.3d 1164, 1170 (10th Cir. 2009) ("While the party opposing summary judgment need not produce evidence in a form that would be admissible at

11

trial, the content or substance of the evidence must be admissible.") (citation omitted). Beyond this inadmissible testimony, Sockeye has not identified other evidence that would support the falsity of Modern's statements regarding the Resorts World opportunity. The Court therefore finds that Sockeye's first theory of fraudulent inducement fails.

As to the second allegation, Sockeye has identified no evidence of a knowing misrepresentation of material fact regarding the 270 cabinets supposedly available for Sockeye's use in other territories. Instead, as the Court has already noted, the asserted fact regarding this representation is not supported by the citation to the record. The Court therefore finds that Sockeye's second theory of fraudulent inducement fails.

As to the third allegation, Sockeye does not identify any statement that Modern made before the License Agreement was signed that was false regarding its capabilities in New York, Alabama, or Florida. In its response to one of Modern's asserted facts, Sockeye cites evidence that Modern, as a Louisiana company, was unable to do business in New York. Docket No. 208 at 2-3, ¶ 5. This evidence would be sufficient to create a dispute of fact as to the falsity of any statement by Modern regarding its ability to do business in New York. But Sockeye identifies no evidence that Modern had represented to Sockeye, prior to the signing of the License Agreement, that Modern was presently able to do business in New York.

To the extent that Sockeye might argue that its assertion of the fact offered at Docket No. 208 at 7, ¶ 3 – that Modern told Sockeye it could "quickly" place gaming cabinets in the exclusive territories – is evidence of a statement being made about Modern's distribution capabilities, the Court notes again that the portion of the record

cited does not support this asserted fact. Sockeye cites a portion of Mr. Seymour's deposition testimony in which Mr. Seymour was asked about discussions he had with Modern employees in 2018 and 2019. *Id.* (citing Docket No. 208-7 at 11, 452:4-25). Mr. Seymour recounts discussions of a revenue-sharing model and says that Modern told him "we'll help you get your machines placed." Docket No. 208-7 at 11, 452:12-16. Mr. Seymour testified that Modern did not provide him with any specific details about the terms of the revenue-sharing agreement. *Id.* at 11, 452:17-21. He also testified, in response to the question, "Did Modern say to you when it would provide the cabinets to Sockeye?," that "[t]hey said when I needed them, if and when I needed them." *Id.* at 11, 452:22-25. This is not the same as a representation regarding Modern's distribution capabilities in New York, Alabama, or Florida. Sockeye also identifies no instance of Modern making a representation regarding Modern's distribution capabilities in Alabama or Florida. The Court therefore finds that Sockeye's third theory of fraudulent inducement fails.[15]

---

[15] Even if there were evidence that Modern made a representation regarding its capabilities to Sockeye, Sockeye offers no evidence of the falsity of such a statement. The only fact offered by Sockeye regarding Modern's distribution capabilities, or the lack thereof, is at Docket No. 208 at 8, ¶ 10, where Sockeye offers that "Modern lacked resources in Alabama, Florida, or North Carolina, instead making Native Gaming Services . . ., a resource generated by Sockeye, its agent; NGS made no contact with any actual casino in North Carolina or Florida." *Id.* However, the exhibits cited in support of this fact, which consist of several emails and a screenshot of a person's LinkedIn profile, do not support the asserted fact. Thus, the only facts the Court is left with regarding Modern's capabilities are the facts offered by Modern that it has placed over 3,400 gaming units and that "Modern has historically expanded to support business opportunities as they arose." Docket No. 156 at 3, ¶¶ 4-5. The Court therefore finds that there is no genuine dispute of material fact as to the falsity of any representation about Modern's distribution capabilities.

The Court will dismiss with prejudice Sockeye's claim for fraudulent inducement and will grant Modern's motion for summary judgment on all three counterclaims.

### D. Rule 702 Motion to Exclude Expert Opinions of Mr. Seymour

Modern filed a motion to exclude, pursuant to Federal Rule of Evidence 702, expert opinions offered by Mr. Seymour in support of Sockeye's counterclaims. Docket No. 150. As the Court has now dismissed Sockeye's counterclaims, the Court will deny as moot the motion to exclude Mr. Seymour's opinions.

## IV. CONCLUSION

It is therefore

**ORDERED** that Plaintiff's Motion for Summary Judgment on all Counterclaims [Docket No. 156] is **GRANTED**. It is further

**ORDERED** that Sockeye Software Inc.'s counterclaims are **DISMISSED with prejudice**. It is further

**ORDERED** that Plaintiff's Motion to Partially Exclude Todd Seymour [Docket No. 150] is **DENIED as moot**.

DATED March 2, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge